THE LAW OFFICES OF DAVID W. WOLF  ATTORNEY FOR PLAINTIFF
BY:  DAVID W. WOLF, ESQUIRE
IDENTIFICATION NUMBER:  42546
THE LEWIS TOWER BUILDING - SUITE 805
225 SOUTH FIFTEENTH STREET
PHILADELPHIA, PENNSYLVANIA 19102
(215) 546-7450; FAX (215) 546-0753

| | |
|---|---|
| BASIRU KANAJI | : |
|     Plaintiff, | : **CIVIL ACTION** |
| | : |
| v. | : **DOCKET NO.: 00-CV-937** |
| | : |
| THE CHILDREN'S HOSPITAL OF | : **JURY TRIAL DEMANDED** |
|     PHILADELPHIA, | : |
|     Defendant. | : **HON. CYNTHIA M. RUFE** |
| | : |
| | : |

## PLAINTIFF'S PRETRIAL MEMORANDUM

Plaintiff respectfully and timely submits his pre-trial memorandum, pursuant to Local Rule of Civil Procedure 16(c) and this Honorable Court's scheduling Orders of July 16, 2003, and August 22, 2003 (requiring Plaintiff to file his Pretrial Memorandum by September 5, 2003).

**1.**  **NATURE OF ACTION AND JURISDICTION**

The jurisdiction of this Court is invoked pursuant to the Federal Question Doctrine.  This is an action arising under Age Discrimination in Employment Act ("ADEA"), as amended, 29 U. S. C. § 621 et seq. and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., ("Title VII").  More specifically, Defendant discriminated against Plaintiff due to Plaintiff's national origin, gender and age.  All of the discriminatory acts alleged herein occurred in the City of Philadelphia, within the jurisdiction of this Honorable Court.

1

2.   **STATEMENT OF FACTS**

   A.   **The Plaintiff**

Plaintiff, Basiru Kanaji is a male of direct African descent, born and raised in what is now Gambia, a country in Western Africa.  He was born on January 10, 1952 and was 45 years old at the time of the termination of his employment with Defendant.  He is presently a naturalized United States citizen.  At all times relevant herein, he spoke English well, and with a noticeable African accent.

Mr. Kanaji first came to the United States in 1970.  He graduated from Hoosick Private High School in Hoosick Falls, New York in 1973.  Mr. Kanaji won an academic scholarship to Voorhees College in Denmark, South Carolina where he earned a Bachelor of Arts degree in History with a minor in Mathematics in 1977.  In 1985 he earned two Master's Degrees from Villanova University, a Master's of Human Service and a Master's of Public Administration.

Mr. Kanaji went on to earn a Certification in Structural Family Therapy from the Child Guidance Center of Philadelphia, Certification in Chemical Abuse Therapy from Temple University, and Certification for working with children ages zero to three from the National Training Institute's National Center for Infants, Toddlers and Families in Washington, D.C.  He has completed seminars in Child Welfare Training and Research and Effective Intervention with Substance Abusing Families at Temple University.

   B.   **Plaintiff's Employment with Defendant**

Defendant employed plaintiff for more than thirteen years before the termination of Plaintiff's employment.  Plaintiff was not subject to any discipline by Defendant prior to his termination.  Plaintiff was the only male Family Service Counselor out of approximately thirteen similarly situated immediate coworkers.  Plaintiff was one of three persons employed in his

program who had been born in Africa.  Plaintiff was the second oldest of his immediate coworkers.

Plaintiff's position while employed by Defendant was that of a Family Service Counselor for Defendant's Philadelphia Child Guidance Center (hereinafter "PCGC").  His duties included visiting the homes of at risk families that were participating in PCGC's programs to monitor their progress.  The Family Service Counselor's visits to families in the program were recorded on forms called Family Contact Summaries.  The information from these Family Contact Summaries was then recorded on In Kind Forms, which were submitted to the Federal Government for as requirement of the grant Defendant received from the Department of Health and Human Services.

The agents of Defendant who made the decision to terminate Plaintiff's employment are Cynthia Chestnut and Deborah Tanksley-Brown. Ms. Tanksley-Brown, despite being African American herself, had displayed a bias against Africa and Africans, including African Americans whom she viewed as being too Afro-centric in their dress or culture.  Ms. Chestnut and Ms. Tanksley-Brown treated Mr. Kanaji unlike his American born, younger, and female coworkers by, among other things, repeatedly "grilling" him during staff meetings, asking his coworkers about his work and telling them to "keep an eye" on Mr. Kanaji, opening Mr. Kanaji's personal mail, and harassing him about paperwork that he had already turned in.  Mr. Kanaji was singled out for this harsh treatment, while Ms. Chestnut and Ms. Tanksley-Brown treated his younger, American born, female coworkers with professional respect.  Indicative of her bias against Africans, Ms. Tanksley–Brown ordered Mr. Kanaji and an African co-worker to cease referring to one another as "African" at work, she removed African artwork from the halls of the office

after she arrived at PCGC (late in Plaintiff's tenure) and she openly criticized ethnic African clothing worn by Plaintiff's co-workers.

### D. Defendant's Termination of Plaintiff's Employment

The Defendant terminated the employment of Mr. Kanaji, and only Mr. Kanaji, for contact that was widely practiced by other similarly situated employees, including Mr. Kanaji's supervisor, Cynthia Chestnut. Defendant falsely alleges that Plaintiff's employment was terminated because he falsified information on an In-Kind report using correctional fluid. Defendant has failed to produce or identify any originals of the In-Kind reports or copies or originals of the Family Contact Summaries relating to these In Kind Forms. The Defendant has produced copies of only a fraction of the allegedly falsified In-Kind forms (four faxed non-original copies) and not a single original copy showing the use of correction fluid. It is not possible to determine by the copies that have been provided if correction fluid was used on the original documents.

Defendant's Rule 30(b)(6) witness established that Plaintiff's submission of In-Kind forms with correctional fluid and photocopied client signatures were the only reasons for the termination of Plaintiff's employment. However, documentary evidence and testimony categorically establishes that Plaintiff's younger, female, American born co-workers regularly used correctional fluid on both Family Contact Summaries and In-Kind forms. This use of correctional fluid by these younger, female, American born employees continued after Defendant terminated Plaintiff's employment. Plaintiff's similarly situated younger, female, American born co-workers also regularly submitted In-Kind forms with non-original, photocopied signatures of the program's clients.

None of the Plaintiff's similarly situated younger, female, American born co-workers were ever investigated or disciplined in any way for submitting In-Kind forms with correction fluid and/or photocopied client signatures.

E. **Continuation of the Life Roots Program**

The Life Roots Program that employed Mr. Kanaji was funded by a five year federal grant from the Department of Health and Human Services that was extended for a sixth year. The extension in the fall of 1998 and a new Federal grant was issued under the title Life Roots/Early Head Start. This program continued to employ many members of the Life Roots staff from the original grant period. Life Roots employees were given the opportunity to apply and interview for positions in the continuation program before they were advertised to the public. The positions in the new program closely paralleled positions in the prior program.

F. **Disputed Issues of Fact**

Defendant failed to maintain its personnel file regarding Mr. Kanaji and the documents relating to his termination (as required by applicable Federal regulations and Defendant's own policies). Defendant failed to produce these documents despite being ordered to do so by this Honorable Court. Plaintiff believes that these missing documents (which include all performance reviews ever completed for the Plaintiff during his thirteen years of employment with defendant) would support Plaintiff's claims against Defendant.

Plaintiff wishes to introduce into evidence Federal regulations regarding the required maintenance of employment records as well as evidence that verifies that these regulations apply to Defendant.

Defendant is expected to claim that Plaintiff confessed to falsifying forms. Plaintiff, however, categorically denied this allegation and actively challenged his termination through Defendant's grievance procedure.

Defendant is expected to claim that Plaintiff never complained of discrimination while employed by the Defendant. Plaintiff will rebut this claim with the testimony of a former supervisor, with whom Plaintiff discussed, prior to his termination, the unfair treatment he received from Ms. Tanksley-Brown and Ms. Chestnut.

Defendant is expected to claim that Plaintiff's damages are limited because Plaintiff would have been terminated as part of a restructuring of the program for which he was employed. As set forth above, the Life Roots program continued under a new federal fund as the Life Roots/Early Head Start Program. Plaintiff will present evidence that Defendant provided new positions for many of its employees from the program after the restructuring and that Plaintiff's thirteen years of experience and spotless record (but for the false allegations that led to his termination) would have led to his continued employment by Defendant. Defendant also provided outplacement services to its employees during this restructuring.

**3.    DAMAGES CLAIMED**

As of April 26, 2002, Mr. Kanaji's damages included back pay in the amount of $68,042, front pay damages in the amount of $269,349 and lost fringe benefits in the amount of $122,318 for a total of $491,044 in direct economic damages. An analysis of these economic damages is set forth in the expert report of Royal A. Bunin, MBA and David T. Bunin, F.S.A., dated April 26, 2002 and based upon Plaintiff retiring at age seventy. A true and correct copy of this report is attached hereto, along with the Bunins' expert qualifications and other required information, as Supplemental Attachment "A".

Mr. Kanaji claims special/compensatory damages for his emotional distress, mental anguish and personal humiliation in the maximum statutory amount.

Mr. Kanaji requests that this Honorable Court enter an order granting the requests for injunctive relief set forth in his Amended Complaint and incorporates those requests by reference as though fully set forth herein.

Pursuant to Title VII as amended Mr. Kanaji also claim punitive damages against Defendant in an amount to punish and deter Defendant from engaging in similar intentional violations of anti-discrimination laws in the future and serve as an example to other employers. Mr. Kanaji also claims attorney's fees and costs of this litigation, pursuant to the statutes giving rise to his claims, in an amount to be determined at the end of this litigation.

4. **NAMES AND ADDRESSES OF WITNESSES**

   **Witnesses Regarding Liability**

   Basiru Kanaji
   17 West Chester Pike  Apt. #4A
   Ridley Park, PA 19078

   Nadine Blackwell, R.N.
   2303 Perot Street
   Philadelphia, PA  19130
   1932 West Berks Street
   Philadelphia, PA  19121

   Sandra Calhoun
   617 N. 4th Street
   Philadelphia, PA  19123
   215-222-5104

   Tracy Freeman
   1839 South 65th Street
   Philadelphia, PA 19142

   Joseph W. Woodlock
   8400 Lindbergh Blvd. - Apt. 1011

Philadelphia, PA  19153

Glenn Hollis
151 South Bishop Ave., Apt. K-14
Secane, PA 19018

Plaintiff may call the following witnesses as part of Plaintiff's case-in-chief if certain factual stipulations are not reached or for rebuttal testimony:

Thelma Gary
34th Street and Civic Center Blvd.
Philadelphia, PA  19104-4322

Denise Outlaw
34th Street and Civic Center Blvd.
Philadelphia, PA  19104-4322

Michele Chapman
34th Street and Civic Center Blvd.
Philadelphia, PA  19104-4322

Patricia Urban
34th Street and Civic Center Blvd.
Philadelphia, PA  19104-4322

Jeffrey Rivest
34th Street and Civic Center Blvd.
Philadelphia, PA  19104-4322

Sandra Harvey White
622 Fern Street
Yeadon, Pennsylvania 19050

Lavon R. White
425 Glendale Road
Upper Darby, Pennsylvania  19082

Venice Lambert Anderson
3405 Anderson Road
Nashville, Tennessee  37217

Donna Davis Bibbs
c/o The Children's Hospital of Philadelphia
34th and Civic Center Blvd.

Philadelphia, Pennsylvania 19104-4399

O. Denis Ekwerike, Ed. D.
5354 Webster Street
Philadelphia, Pennsylvania 19143

Vivian Stearns
6 Pondview Court
Sicklerville, New Jersey 08081

Cynthia Chestnut
4 Hogan Circle
Middletown, DE 19709
(302) 376-8073

Deborah Tanksley-Brown
449 Wellington Road
West Chester, Pennsylvania 19380

Arthur Horne
(former employee of Defendant, who thus has address but has not supplied Plaintiff with same – will supply)

C. Wayne Jones
(former employee of Defendant, who thus has address but has not supplied Plaintiff with same – will supply)

C. Jeffrey Hoydu
34th Street and Civic Center Blvd.
Philadelphia, PA 19104-4322

Brenda Pemberton
34th Street and Civic Center Blvd.
Philadelphia, PA 19104-4322

William Squires
34th Street and Civic Center Blvd.
Philadelphia, PA 19104-4322

Thomas Tantillo
C/o The Children's Hospital of Philadelphia
34th Street and Civic Center Blvd.
Philadelphia, Pennsylvania 19104-4399

Julie K. Meyers

130 Spruce Street, Apartment #10B
Philadelphia, Pennsylvania  19106

Dr. Judith Dogin
c/o Community Behavioral Health
714 Market Street
Philadelphia, Pennsylvania  19106

Plaintiff reserves the right to call any witnesses listed by Defendant for examination by Plaintiff's during Plaintiff's case-in–chief

**Witnesses Regarding Damages**

Basiru Kanaji
17 West Chester Pike  Apt. #4A
Ridley Park, PA 19078

David T. Bunin, F.S.A.
The Wynnewood House, Suite 109
300 East Lancaster Ave.
Wynnewood, PA  19096
(610) 642-4700

Royal A. Bunin, M.B.A.
The Wynnewood House, Suite 109
300 East Lancaster Ave.
Wynnewood, PA  19096
(610) 642-4700

Plaintiff may call the following witnesses as part of Plaintiff's case-in-chief if certain factual stipulations are not reached or for rebuttal testimony:

James E. Daniels
2534-36 N. Broad Street, Suite 200
Philadelphia, PA  19132

Dr. Kamuvaka
Multi-Ethnic Behavioral Health
5616 Woodland Ave.
Philadelphia, PA

Plaintiff reserves the right to call any witnesses listed by Defendant for examination by Plaintiff's during Plaintiff's case-in–chief

5. **SCHEDULE OF EXHIBITS**

    A schedule of Plaintiff's exhibits is attached hereto as Supplemental Attachment B. Plaintiff reserves the right to use during Plaintiff's case-in–chief any Exhibit as listed by Defendant in either its previous Pretrial Memorandum dated February 10, 2003, or its current version to be filed pursuant to the court's revised scheduling orders.

6. **ESTIMATED TRIAL TIME REQUIRED**

Liability: 4 days, damages 1 day.

7. **SPECIAL COMMENTS AND LEGAL ISSUES**

    A.    **SPOLIATION OF EVIDENCE BY DEFENDANT**

Plaintiff respectfully requests appropriate remedies, including but not limited to appropriate jury instructions allowing the jury to infer that the Defendant's failure to comply with not only Federal regulations regarding the maintenance of employment records, but also Defendant's own policies regarding the maintenance of employment records is evidence of Defendant's attempts to conceal evidence that would support Plaintiff's claims. This requested instruction primarily would include missing key documentation of:

- the original documents Defendant claims Plaintiff falsified;
- the Family Contact Summaries upon which Defendant claims it relied upon in making the determination that Plaintiff had submitted falsified in-kind reports;
- documents showing the retention or offered retention of Plaintiff's co-Family Service Counselors to whom Defendant offered continued employment in the Life Roots Early Head Start program that continued the Life Roots program after the initial grant funding period ended;
- Defendant's records of Plaintiff's employment;

### B. JUDICIAL NOTICE OF FEDERAL REGULATIONS APPLICABLE TO DEFENDANT REGARDING MAINTENANCE OF EMPLOYMENT RECORDS

Plaintiff respectfully requests that this Honorable Court take judicial notice of 41 CFR § 60-741.80 (Produced as Exhibit R to Plaintiff's 5/3/02 filing) and 29 CFR Ch. XIV § 1602.7 – 1602.14 (Produced as Exhibit Q to Plaintiff's 5/3/02 filing), as well as Defendant's status as a federal contractor.  These regulations require Defendant, as a matter of law, to maintain records regarding Plaintiff's employment and termination.

### C. STIPULATION REGARDING AUTHENTICITY AND GENUINENESS AND ADMISSIBILITY AS BUSINESS RECORDS OF ORIGINAL FAMILY CONTACT SUMMARIES AND ORIGINAL IN KIND FORMS PRODUCED BY DEFENDANT.

Plaintiff respectfully requests that Defendant stipulate to the authenticity, genuineness and admissibility as business records, pursuant to Federal Rule of Evidence 803(6), of all original family contact summaries and original in kind forms produced by the Defendant in the course of this litigation, so they can be admitted as trial exhibits without the need to call a custodian of records, nor the many particular employees who created the forms originally.  These forms are vital to this case because Plaintiff believes they establish that the conduct for which he was allegedly terminated was widely practiced by many similarly situated co-workers, including Plaintiff's own supervisor, none of whom were disciplined for such conduct.  These documents were not produced until very late in this litigation and were created by approximately a dozen of Mr. Kanaji's similarly situated co-workers.  The originals of these documents, which Plaintiff intends to use as trial exhibits, have been in Defendant's sole custody and control at all times.  Although Plaintiff has listed such individuals as witnesses, it would be excessively burdensome to have each individual author testify as to the authenticity and genuineness of his or her own

family contact summaries and in kind forms. In the interest of conserving the Court's resources, and facilitating the just, speedy and inexpensive disposition of this action, Plaintiff respectfully requests that the Defendant stipulate that all of the original family contact summaries and original in kind forms produced by the Defendant are authentic, genuine and admissible as business records.

Plaintiff has drafted an extensive list of other proposed agreed factual stipulations for discussion with Defendant and will attempt to resolve as many of these stipulations as possible prior to the Pretrial Conference. For the convenience of the Court and Defendant's counsel the proposed agreed factual stipulations are attached hereto as Supplemental Attachment "C".

### D.     MOTIONS IN LIMINE

Plaintiff incorporates by reference his Motion to Preclude Defendant from Presenting Testimony in Violation of Federal Rules of Evidence 1002 and 1003, and Testimony Inconsistent with Defendant's Rule 30 (b)(6) Witness, filed on March 24, 2003 at docket number 121, as though fully set forth herein. This motion respectfully requests that this Honorable Court preclude Defendant's use of evidence that violates the Best Evidence Rule and evidence that is inconsistent with Defendant's Rule 30(b)(6) witness's testimony regarding the reasons for Defendant's decision to terminate Plaintiff's employment. This motion was dismissed without prejudice to renew by this Honorable Court's Order of April 4, 2003. Plaintiff hereby renews this previously filed motion.

Plaintiff incorporates by reference his Motion in Limine to Preclude EEOC Dismissal and Notice Of Rights Letter and Defendant's EEOC Position Statement, filed on March 28, 2003 at docket number 124, as though fully set forth herein. This motion respectfully requests that this

Honorable Court preclude Defendant's use of these form letters and other out of court statements in the trial of this matter. This motion was dismissed without prejudice to renew by this Honorable Court's Order of April 4, 2003.  Plaintiff hereby renews this previously filed motion.

Filed herewith please find Plaintiff's Motion in Limine to Preclude Certain Exhibits, Testimony and Arguments.  This motion has not previously been filed with this Honorable Court.  Plaintiff incorporates this motion as though fully set forth herein.

Defendant filed its Motion in Limine to Preclude the Testimony of Glenn Hollis on April 1, 2003, at docket number 126. Filed herewith please find Plaintiff's response to this motion and affirmative limine motion to permit the testimony of Mr. Hollis.  This response and affirmative limine motion has not previously been filed with this Honorable Court.  Plaintiff incorporates this response and affirmative limine motion as though fully set forth herein.  Mr. Hollis' testimony is admissible and relevant to this matter at the very least to rebut Defendant's anticipated claims that Mr. Kanaji did not complain to anyone of unfair treatment prior to Defendant's termination of his employment, and to discuss documents that appear to be missing from Mr. Kanaji's personnel file.

### E.    LEGAL PRECLUSION OF THE ISSUE OF SUCCESSOR LIABILITY

Plaintiff's Motion in Limine also includes a discussion of precluding Defendant from arguing that it is not liable for the alleged acts of the Philadelphia Child Guidance Center related to this case.  The two entities merged and Mr. Kanaji was terminated under the policies of the Children's Hospital of Philadelphia.  This argument is based upon the law regarding the liability of successors in interest and is set forth more fully in Plaintiff's Motion in Limine to Preclude Certain Exhibits, Testimony and Arguments, submitted herewith.

**F.  DEFENDANT'S LIMITATION BY JUDGE WALDMAN'S ORDER OF APRIL 2, 2002 (DOCKET NO. 42) TO USING THE FOUR FAXED PHOTOCOPIES OF THE ALLEGEDLY FALSIFIED DOCUMENTS AS PROOF OF DEFENDANT'S CLAIM OF FALSIFICATION**

On April 2, 2002, the Court ruled, "defendant will be limited in support of its falsification claim to reports allegedly falsified or altered of which copies have been produced by April 12, 2002."  The only documents Defendant produced relating to the alleged falsification within the Court's time limit, or to date, are the four photocopies of a fax, produced as D 0137 to D 0140.  At the Status Conference, Defendant's counsel admitted that the original documents Mr. Kanaji allegedly falsified cannot be located and have not been produced, and the Family Contact Summaries that relate to the allegedly falsified documents cannot be located and have not been produced.  Plaintiff respectfully requests that the Order of April 2, 2002, be carefully adhered to at trial and Defendant instructed accordingly.


                                    Respectfully submitted,



                                    **DAVID W. WOLF, ESQUIRE**
                                      **Attorney for Plaintiff**
                                      **Basiru Kanaji**

THE LAW OFFICES OF DAVID W. WOLF
BY:  DAVID W. WOLF, ESQUIRE
IDENTIFICATION NUMBER:  42546
THE LEWIS TOWER BUILDING - SUITE 805
225 SOUTH FIFTEENTH STREET
PHILADELPHIA, PENNSYLVANIA 19102
(215) 546-7450; FAX (215) 546-0753

Dated:        September 5, 2003